UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

THE MILKY WHEY, INC.,

       Plaintiff,

  -v-                                            No.   23-CV-486-LTS

HSBC BANK USA, N.A. AND HSBC BANK
CANADA,

       Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

       The Milky Whey, Inc. ("Plaintiff" or "Milky Whey") brings this action against HSBC Bank USA, N.A. ("HSBC US") and HSBC Bank Canada ("HSBC CA") (collectively, "Defendants"), asserting claims for wrongful dishonor of a standby letter of credit and breach of contract.  The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332.

       Before the Court is Defendants' motion (docket entry no. 22) to dismiss the Amended Complaint (docket entry no. 17 ("Amend. Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Defendants' motion is granted.

## BACKGROUND

       The following allegations are taken from the Amended Complaint and documents integral thereto, and are presumed true for the purposes of this motion.

On or about June 1, 2018, on the application of non-party The Winning Combination, Inc., Defendant HSBC CA issued an irrevocable standby letter of credit (the "HSBC SBLC" or "SBLC") in the amount of $800,000.  (Amend. Compl. ¶ 9.)  Defendant HSBC US was the confirming bank, and Plaintiff was the named beneficiary of the HSBC SBLC.  (Id. ¶¶ 10-11.)  "[B]y its own terms," the HSBC SBLC "required presentation of documents to effect a draw on the SBLC" at HSBC US.  (Id. ¶ 12.)  Specifically, the HSBC SBLC stipulated that a written demand must be accompanied by, inter alia, the "ORIGINAL OF [THE] IRREVOCABLE STANDBY LETTER OF CREDIT AND ITS AMENDMENT(S) IF ANY OR REMITTING BANK'S ATTESTATION STATING THAT THE ORIGINAL IRREVOCABLE STANBDY LETER OF CREDIT HAS BEEN ENDORSED FOR THE AMOUNT CLAIMED."  (Docket entry no. 24-2, Exhibit B ("HSBC SBLC") at 2.)  The SBLC also contained a choice of law clause, which provided that:

> EXCEPT SO FAR AS OTHERWISE EXPRESSLY STATED, THIS IRREVOCABLE STANDBY LETTER OF CREDIT IS SUBJECT TO THE INTERNATIONAL STANDBY PRACTICES - ISP 98, INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION NUMBER 590 ("ISP 98") AND, FOR MATTERS NOT COVERED BY ISP 98, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

HSBC SBLC at 3.

The initial expiration date of the SBLC was March 9, 2019, but the date was extended three times by three separate amendments to the SBLC, for a final expiration date of March 9, 2022.  (Amend. Compl. ¶¶ 14-15.)  The First Amendment, which reduced the amount of the SBLC to $790,000, required the approval and signatures of an authorized representative of Plaintiff, the named beneficiary, and an authorized representative of HSBC US to go into effect.

(Id. ¶¶ 16-17.) The First Amendment went into effect, and "was treated as such by Defendants." (Id. ¶ 19.)

In 2022, The Winning Combination purchased goods from Plaintiff but failed to pay for the goods, leaving a balance owed to Plaintiff in excess of $790,000. (Id. ¶ 20.) On or about March 9, 2022, the date on which the SBLC expired, Plaintiff presented documents "called for by the SBLC" to HSBC Bank US. (Id. ¶ 21.) Defendants refused payment of the draw "shortly before [the SBLC] expired," because a copy of the First Amendment, rather than the original, was presented. (Id. ¶ 22.) HSBC CA, the issuing bank, refused to waive presentation of an original of the First Amendment when contacted by HSBC US. (Id. ¶ 26.)

On November 2, 2022, Plaintiff initiated this action in the New York Supreme Court, New York County. (Docket entry no. 1-1 ("Exhibit A – Summons and Complaint").) Defendants removed the action to this Court on January 19, 2023. (Docket entry no. 1.) Plaintiff filed the operative Amended Complaint, which asserts causes of action for wrongful dishonor and breach of contract and seeks damages in the amount of $790,000, on February 27, 2023.[1] (Amend. Compl. ¶ 36.)

## STANDARD

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[1] The Amended Complaint asserts three causes of action – two for wrongful dishonor of the SBLC that differ only in underlying legal theory, and one for breach of contract. All three are premised on Defendants' rejection of Plaintiff's draw on the SBLC based on failure to provide originals of the required documentation.

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S at 678 (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.  The factual allegations pleaded "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

As a general matter, on a motion to dismiss, the court may only consider information within the four corners of the operative complaint, unless there are "written instrument[s] attached to it as an exhibit or any statements or documents incorporated in it by reference," but the Court may also consider any other documents that the complaint "relies heavily upon . . . render[ing] the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted).  "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

In this case, the Court finds that the HSBC SBLC is integral to the Amended Complaint, as the claims for wrongful dishonor and breach of contract stand or fall based upon the terms of the HSBC SBLC.  The authenticity of the SBLC tendered by Defendants in connection with their motion has been affirmed by Defendants' counsel (see docket entry no. 24

("Luffin Decl.") ¶ 3) and is not disputed by Plaintiff.  The International Standby Practices ("ISP98"), International Chamber of Commerce Publication No. 590, to which the SBLC expressly provides it is subject, and the Official Commentary to ISP98 are likewise integral to the determination of the sufficiency of the Amended Complaint to state a viable claim.

DISCUSSION

The Court begins by reviewing background principles of New York law governing standby letters of credit, which provide necessary context for the body of standby practice rules that primarily govern this dispute, before turning to Plaintiff's asserted claims.

Standby Letters of Credit

"Letters of credit are commercial instruments that provide a seller or lender (the beneficiary) with a guaranteed means of payment from a creditworthy third party (the issuer) in lieu of relying solely on the financial status of a [customer] (the applicant)." Nissho Iwai Eur. v. Korea First Bank, 99 N.Y.2d 115, 119 (N.Y. 2002).  "The customer applies for the letter of credit, specifies the terms of the letter and promises to reimburse the issuer upon honor of the beneficiary's draft." Bank of Cochin, Ltd. v. Mfrs. Hanover Tr. Co., 612 F. Supp. 1533, 1537 (S.D.N.Y. 1985).  The letter of credit therefore operates "to substitute the credit of the issuer," typically a bank, "for the credit of [the beneficiary's] customer," id., and represents the "the bank's irrevocable promise to pay the seller-beneficiary when the latter presents certain documents (e.g., documents of title, transport and insurance documents, and commercial invoices) that conform with the terms of the credit." Alaska Textile Co. v. Chase Manhattan Bank, N.A., 982 F.2d 813, 815 (2d Cir. 1992) (citations omitted).

"The financial value of the letter of credit promise is predicated upon its degree of legal certainty." KMW Int'l v. Chase Manhattan Bank, N.A., 606 F.2d 10, 16 (2d Cir. 1979) (citation omitted). "The issuing bank, or a bank that acts as confirming bank for the issuer, takes on an absolute duty to pay the amount of the credit to the beneficiary, so long as the beneficiary complies with the terms of the letter." Beyene v. Irving Tr. Co., 762 F.2d 4, 6 (2d Cir. 1985). Thereafter, "[t]he payment on the part of the confirming bank to the beneficiary triggers the issuing bank's obligation to reimburse the confirming bank." United States v. Calderon, 944 F.3d 72, 79 (2d Cir. 2019). Because the duty to pay is absolute, and the determination of compliance with the letter of credit is based solely upon the documents presented by a beneficiary, a confirming bank "inspects the documents rigorously to determine that they comply exactly with the requirements of the letter of credit—for the documents are its only protection." Id. at 80 (emphasis in original) (citation omitted). "If the documents were nonconforming but honored, an issuing bank could sue a confirming bank for 'wrongful honor.'" Id. (citation omitted).

As a result, the majority of jurisdictions, including New York, have adopted a rule of "strict compliance." Id. at 88. "Strict compliance means that 'the papers, documents and shipping directions must be followed as stated in the letter' . . . . No substitution and no equivalent, through interpretation or logic, will serve." United Commodities-Greece v. Fidelity Int'l Bank, 64 N.Y.2d 449, 455 (N.Y. 1985) (citations omitted). As the New York State Court of Appeals has explained, "The rule finds justification in the bank's role in the transaction being ministerial . . . and to require it to determine the substantiality of discrepancies would be inconsistent with its function." Id. (citations omitted). This principle is codified in Article 5 of

the New York Uniform Commercial Code ("UCC"), which governs letters of credit.  See N.Y. U.C.C. § 5-108.

Courts in this circuit have, however, recognized that minor typographical errors will not render a document nonconforming in some limited circumstances.  See, e.g., Beyene, 762 F.2d at 6 (providing example of the name "Smith" misspelled as "Smithh").  The Official Comments to the Revised UCC, enacted in 2000, address this issue directly, noting that "[s]trict compliance does not mean slavish conformity to the terms of the letter of credit," and that "standard practice (what issuers do) may recognize certain presentations as complying that an unschooled layman would regard as discrepant."  N.Y. U.C.C. § 5-108 cmt. 1.  The Comments provide examples of minor typographical errors that are not materially significant.[2]  Id.

Wrongful Dishonor Claims[3]

"To prevail on a claim for wrongful dishonor of a letter of credit, a plaintiff must demonstrate: (1) that there exists a letter of credit issued by the defendant for the benefit of the plaintiff; (2) that the plaintiff timely presented conforming documents to the defendant as required by the letter of credit; and (3) that the defendant failed to pay the plaintiff on the letter

---

[2]   The most significant departure by a court in this Circuit appears to have occurred in the case of Bank of Cochin, Ltd. v. Manufacturers Hanover Trust Co., 612 F. Supp. 1533 (S.D.N.Y. 1985), in which the court excused the plaintiff's failure to provide six copies of the required documents, rather than five, to draw on a standby letter of credit.  Notably, however, to support this departure, the court relied in part on Flagship Cruises, Ltd. v. New England Merchants Nat'l Bank, 569 F.2d 699, 705 (1st Cir. 1978), the application of which was specifically rejected in the Official Comments to the Revised UCC due to the Flagship Court's arguable use of a "substantial compliance" standard, rather than a standard of "strict compliance."  See N.Y. U.C.C.  5-108 cmt. 1.

[3]   A claim for wrongful dishonor is nearly identical to a claim for breach of contract— "[b]oth causes of action require a breach of the obligations set out in the letter of credit." Bath Iron Works Corp. v. WestLB, No. 02-CV-2272-RCC, 2004 WL 784856, at *3 n.5 (S.D.N.Y. Apr. 2, 2004).  The Court therefore addresses these claims together.

of credit."  ACR Sys. v. Woori Bank, 232 F. Supp. 3d 471, 478 (S.D.N.Y. 2017) (citations omitted); see also ISP98 Rule 2.01.  The parties do not dispute that the first and third elements are met, i.e., that the HSBC SBLC and its three subsequent amendments were valid and binding (Amend. Compl. ¶¶ 15, 19), and that Defendants refused payment of Plaintiff's draw on the HSBC SBLC (Amend. Compl. ¶¶ 22, 25).

The sole element in dispute is whether Plaintiff provided documents that conform to the HSBC SBLC.  The parties agree on the material facts, which are set forth in Plaintiff's Amended Complaint and the HSBC SBLC: (1) Plaintiff did not provide an original of the First Amendment (Amend. Compl. ¶¶ 22, 27); (2) the SBLC required that a written demand be accompanied by the "ORIGINAL OF [THE] IRREVOCABLE STANDBY LETTER OF CREDIT AND ITS AMENDMENT(S) IF ANY OR REMITTING BANK'S ATTESTATION STATING THAT THE ORIGINAL IRREVOCABLE STANBDY LETER OF CREDIT HAS BEEN ENDORSED FOR THE AMOUNT CLAIMED" (id. ¶ 32; HSBC SBLC at 2); and (3) the SBLC was governed by the choice of law clause detailed above, which, "EXCEPT SO FAR AS OTHERWISE EXPRESSLY STATED," subjected the SBLC to the "INTERNATIONAL STANDBY PRACTICES – ISP 98, INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION NUMBER 590 ("ISP 98") AND, FOR MATTERS NOT COVERED BY 98," provided that the SBLC "SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF NEW YORK"  (HSBC SBLC at 3).

Plaintiff argues that it has nevertheless stated a claim upon which relief may be granted because "[p]resentation of the original First Amendment to the SBLC was a formality of no practical consequence . . . and dishonor of the SBLC on the basis that it was not presented amounted to an application of 'slavish compliance' to the detriment of Plaintiff and to the benefit

of Defendants."  (Amend. Compl. ¶ 24.)  Essentially, Plaintiff is arguing that its presentation was similar to those in cases where courts have excused discrepancies as "minor variations."  (Docket entry no. 29 ("Pl. Mem.") at 4 (noting that New York law has "recognized that a missing amendment in presentation need not be fatal").)  Whether Plaintiff's claim states a cause of action therefore turns on the legal question of whether Plaintiff's provision of a copy of the SBLC was a sufficiently conforming presentation, such that Defendants' dishonor of the SBLC on that basis was wrongful.

Despite the adoption of ISP98 by the International Chamber of Commerce nearly twenty years ago, few courts appear to have opined on the meaning of its provisions and its interactions with the relevant forum's body of laws where a standby letter of credit adopts the ISP98 Rules.  Much of the Court's analysis therefore turns on the language of the UCC, the ISP98 Rules, the Official Comments to the UCC, and the Official Commentary to ISP98.

In New York, Article 5 of the UCC governs standby letters of credit.  See generally N.Y. U.C.C. art. 5.  Prior to 2000, the UCC permitted parties to agree that all of Article 5 would be overridden by a body of practice rules called the Uniform Customs and Practice for Commercial Documentary Credits ("UCP").[4]  The revised version of Article 5 still allows "the effect of [Article 5]" to be "varied by agreement or by a provision stated or incorporated by reference in an undertaking," N.Y. U.C.C. § 5-103(c), save for a few expressly mandatory

---

[4]   The most recent version of the relevant provision, previously codified at N.Y. U.C.C. § 5-102(4), read: "Unless otherwise agreed, this Article 5 does not apply to a letter of a credit or a credit if by its terms or by agreement, course of dealing or usage of trade such letter of credit or credit is subject in whole or in part to the Uniform Customs and Practice for Commercial Documentary Credits fixed by the Thirteenth or by any subsequent Congress of the International Chamber of Commerce."  See 1963 N.Y. Sess. Laws 1672 (adding subdivision 4).

provisions, id., but differs in important aspects from the prior iteration, as explained by the UCC's Official Comments:

> Under revised Section 5-116 letters of credit that incorporate the UCP or similar practice will still be subject to Article 5 in certain respects. First, incorporation of the UCP or other practice does not override the nonvariable terms of Article 5. Second, where there is no conflict between Article 5 and the relevant provision of the UCP or other practice, both apply. Third, practice provisions incorporated in a letter of credit will not be effective if they fail to comply with Section 5-103(c).

N.Y. U.C.C. § 5-116 cmt. 3.

The current Official Comments to the UCC further note that, except for these "unusual cases," "practice adopted in a letter of credit will override the rules of Article 5[.]" Id. The Official Commentary to ISP98 similarly provides that, "[w]here applicable law may be derogated from or varied . . . the ISP98 Rule would control over the default rule of law." ISP98 Rule 1.02 cmt. 5 (discussing Rev. U.C.C. § 5-103). The ISP98 Rules therefore govern the instant dispute, subject to the exceptions laid out in the UCC and the terms of the HSBC SBLC.

Turning then to ISP98, Rule 4 of the Practices governs examination of documents presented for honor of a standby letter of credit. Rule 4.01 provides that, "Demands for honour of a standby must comply with the terms and conditions of a standby," where compliance is "determined by examining the presentation on its face against the terms and conditions stated in the standby as interpreted and supplemented by [the ISP98] Rules which are to be read in the context of standard standby practice." ISP98 Rule 4.01. As to the standard by which to measure compliance, the Official Commentary notes that ISP98 intentionally omits the "strict compliance" standard that otherwise governs this area of law and is codified in UCC section 5-108:[5]

---

[5]   UCC § 5-108(a) reads: "Except as otherwise provided in section 5-109, an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection

> Rule 4.01 avoids the term "strict compliance" which is a crude and abstract formulation by which to describe the standard of examination and one which is used primarily because it is less inaccurate than the notion of "substantial compliance" against which it is typically contrasted. The test of compliance turns on the role of the particular document in standby practice. The text of some documents must correspond to the text of the standby, others must be identical or exact, whilst still others need merely be not inconsistent with the standby[.]

ISP98 Rule 4.01 cmt. 1.[6]

As to the form of documents presented, Rule 4.15(a) provides that "[a] presented document must be an original." ISP98 Rule 4.15(a). The Official Commentary notes that, "Subrule (a) begins with the presumption that an original is required <u>unless the standby states otherwise</u>," and that, "This understanding is implicit in standard practice." <u>Id.</u> cmt. 2 (emphasis added).

In this case, the HSBC SBLC specifically required that, in order for Plaintiff to draw on the SBLC, Plaintiff must have provided either (1) the "ORIGINAL OF [THE] IRREVOCABLE STANDBY LETTER OF CREDIT AND ITS AMENDMENT(S) (IF ANY)" or (2) the "REMITTING BANK'S ATTESTATION STATING THAT THE ORIGINAL IRREVOCABLE STANDBY LETTER OF CREDIT HAS BEEN ENDORSED FOR THE AMOUNT CLAIMED," along with a written demand and the other documents called for in the HSBC SBLC. (HSBC SBLC at 2.) Plaintiff does not allege that an attestation was provided in

---

(e) of this section, appears on its face strictly to comply with the terms and conditions of the letter of credit. Except as otherwise provided in section 5-113 and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear so to comply." UCC § 5-108(e) reads: "An issuer shall observe standard practice of financial institutions that regularly issue letters of credit."

[6]  Rule 4.09 of the ISP98 Rules governs acceptable textual variations in presentment documents, which courts in this Circuit and New York state courts have sometimes addressed via the so-called "minor variations" exception, discussed above. <u>See</u> ISP98 Rule 4.09; <u>id.</u> cmt. 6. Defendants here have not objected to the content of the documents presented.

lieu of original documents.  (See generally Amend. Compl.)  Rather, Plaintiff specifically alleges that it provided "a copy rather than the original" of the First Amendment to the HSBC SBLC. (Id. ¶ 22.)  The only apparent exception to Rule 4.15(a)'s mandate for original documents would require a contrary provision in the SBLC, or waiver pursuant to the ISP98 Rules, neither of which exists here.

In its opposition briefing, Plaintiff argues that the Complaint nevertheless plausibly states a claim, relying on the case of Ladenburg Thalmann & Co., Inc. v. Signature Bank, 128 A.D.3d 36 (N.Y. App. Div., 1st Dep't 2015).  In that case, the plaintiff asserted that the issuing bank had wrongfully dishonored the relevant standby letter of credit—which appeared to require originals of the standby and any amendments[7]—because the plaintiff had presented a copy of the missing amendment and an affidavit that certified (1) the source of the copy (ironically, the bank that was refusing to pay on the letter of credit) and (2) that the copy was unaltered.  Id. at 38-39, 45.  The missing amendment extended the term of the standby letter of credit, but did not otherwise alter the terms of the original standby letter of credit, and had already been superseded by the later amendments.  Id. at 39.  Relying predominantly on "[f]ederal case law construing UCC 5-108(a)," the New York Appellate Division, First Department held that "the substitution of a true copy of a long-expired amendment constitutes an inconsequential defect that does not violate the strict compliance standard."  Id. at 43, 45.

---

[7]    The relevant provision in the standby letter of credit required presentation of "the original of this standby letter of credit, and all amendments, if any, and the operative notice," along with a drawing statement.  Ladenburg, 128 A.D.3d at 38.  The Ladenburg Court recognized that the letter's use of commas to offset the reference to amendments arguably created an ambiguity as to whether originals of the amendments were required.  Id. at 45. The SBLC at issue here presents no such ambiguity, requiring that Plaintiff provide the "ORIGINAL OF [THE] IRREVOCABLE STANDBY LETTER OF CREDIT AND ITS AMENDMENT(S) (IF ANY)[.]"  (HSBC SBLC at 2.)

However, as Defendants correctly point out, the standby letter of credit and its amendments in Ladenburg had not adopted extrinsic rules of practice, meaning that the agreement and its amendments were governed by the UCC.  Ladenburg is therefore distinguishable from the instant dispute, which is governed by ISP98 and its rules of examination that mandate presentment of original documents, as set forth above.

In short, given the clear language of the HSBC SBLC and the relevant provisions of ISP98, both of which expressly mandate that presented documents be original subject to limited exceptions not here alleged, the undisputed failure by Plaintiff to provide an original of the First Amendment proves fatal to the second element of Plaintiff's claim for wrongful dishonor—"timely present[ation of] conforming documents to the defendant[s] as required by the letter of credit."  ACR Sys. v. Woori Bank, 232 F. Supp. 3d 471, 478 (S.D.N.Y. 2017) (citations omitted).  Defendants' motion to dismiss the Amended Complaint is therefore granted.

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint is granted.  This Memorandum Order resolves docket entry no. 22.  The Clerk of Court is respectfully directed to enter judgment dismissing the Amended Complaint, and to close this case.

SO ORDERED.

Dated: March 31, 2024
      New York, New York

    /s/ Laura Taylor Swain
    LAURA TAYLOR SWAIN
    Chief United States District Judge